[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Gordon Scalo for plaintiff.
Thomas V. Battaglia for defendant. CT Page 11375
Two issues are raised in this case. First, what interest rate applies to the amount owed as a deficiency on a mortgage after a strict foreclosure of real property? Second, how should post-foreclosure payments be applied to the outstanding principal and interest? This court holds that the rate agreed upon by the parties in the note should apply to the amount owed as a deficiency. This court also holds that the debt payments must be applied to the interest first and then to the principal.
On June 6, 1984, the plaintiff, The Bank Mart, filed a complaint against the defendants, Robert and David Sorrell. The following facts are not in dispute. The plaintiff obtained a judgment of strict foreclosure on July 27, 1984, for the property known as 46-48 Sanford Place, Bridgeport, Connecticut. On August 31, 1984, the court (Maiocco, J.) subsequent to an evidentiary hearing entered a deficiency judgment in the amount of $30,650.15. Since the entry of the deficiency judgment, the defendants have paid to the plaintiff a total of $38,425.32, predominantly through a wage execution levied against Robert Sorrell's employer.
Pursuant to General Statutes § 52-356b[1], the plaintiff on August 12, 1994 filed an application for a turnover order seeking a determination of the applicable percentage of post-judgment interest and the manner in which the debt payments would be applied to principal and interest. The plaintiff maintains that the interest rate is eighteen percent and that the payments are applied first to interest and then to principal. The defendants argue that the interest rate is the statutorily provided ten percent and that the payments apply first to the principal and then to the interest once the principal is paid off.
 I.
"Connecticut has by statute long provided for interest on judgments." Little v. United National Investors Corp., 160 Conn. 534,537, 280 A.2d 890 (1971). General Statutes § 52-350f provides in relevant part that "[a] money judgment may be enforced against any property of the judgment debtor . . . to the amount of the money judgment . . . with interest as provided by chapter 663 [General Statutes § 37-1 et seq.] on the money judgment. . . ." General Statutes § 37-1 defines the legal rate of interest and provides in part that "[t]he compensation for forbearance of property loaned . . . shall, in the absence of any agreement to CT Page 11376 the contrary, be at the rate of eight per cent a year. . . ." General Statutes § 37-3a governs the interest rate recoverable as damages and provides in part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."
The plaintiff contends that the note provides an interest rate of eighteen percent and that General Statutes § 37-1 et seq. only apply in the absence of an agreed upon rate. The defendants claim that the statutory rate recoverable as damages under General Statutes § 37-3a, currently ten percent, should apply to their debt.
In interpreting General Statutes § 37-3, a predecessor to § 37-3a, the Supreme Court stated that "the statute was not intended to, and did not, apply to contracts in which there was an express agreement for the payment of a specified lawful rate of interest after maturity." Little v. United national Investors Corp., supra,160 Conn. 540. For a deficiency judgment, "the interest rate applicable is the note rate, not the statutory ten (10%) percent rate on judgments." People's Bank v. Pallman, Superior Court, Judicial District of Ansonia-Milford, No. 33932 (1993). "Connecticut law has interpreted [General Statutes § 37-1 and § 37-3a] together to read that if the parties agree upon a rate of interest until the balance is paid, then the agreed on rate becomes the legal rate in the case." Ibid.
In Little v. United National Investors Corp., supra,160 Conn. 534, the court found the applicable interest rate on the two promissory notes to be the rate of nine percent as provided in the notes, instead of the statutory interest rate under General Statutes § 37-1. In Reynolds v. Ramos, 188 Conn. 316, 449 A.2d 182
(1982), an action for strict foreclosure, the court determined that the fate of interest applicable to the note after maturity should be the agreed upon twelve percent despite the defendant's claim that the statutory rate of General Statutes § 37-1 should apply.
The defendants contend that the legislature has overruled these decisions by statute. They argue that at the time thatLittle and Reynolds were decided, interest on judgments was controlled by General Statutes § 52-349 and that courts looked solely to General Statutes § 37-1 for the applicable rate of CT Page 11377 interest. General Statutes § 52-349 was repealed in 1983 and was replaced by General Statutes § 52-350f. See Public Acts 1983, No. 83-581, § 5. The defendants claim that the cases since 1983 have looked to § 37-3a to determine post-judgment interest. The cases cited by the defendants do in fact apply the interest rate of General Statutes § 37-3a to the amounts remaining unpaid on a judgment. See O'Leary v. Industrial Park Corporation, 211 Conn. 648,560 A.2d 968 (1989); Gionfriddo v. Avis Rent A Car Systems,Inc., 192 Conn. 301, 472 A.2d 316 (1984). Those cases nonetheless are inapposite. First, O'Leary and Gionfriddo address the interest rate applicable to damages awarded in a civil action to recover damages. Second, in those cases, there was no agreement between the parties as to what the interest rate should be. Conversely, here the note explicitly provides that "interest on the unpaid balance from the date of this Note, until paid, [shall be] at the rate of eighteen percent per annum."
To apply the statutory legal rate of interest in these circumstances would subvert traditional loan arrangements. The parties here agreed to an interest rate of eighteen percent. "There is nothing in the nature of the transaction, nor in the customary mode of loaning money, that makes it unreasonable or unjust to allow parties to contract for a rate of interest after maturity as well as before." Little v. United National InvestorsCorp., supra, 160 Conn. 541.
 II.
The second issue is whether debt payments should be credited first to principal and then, once the principal is paid, to interest.
In Reynolds v. Ramos, supra, 188 Conn. 324n. 10, the court made a calculation in a footnote in which it applied payments first to principal and then to interest. That, however, was at most mathematical dicta. The issue was neither raised nor decided in that case. "It is the general rule that a case resolves only those issues explicitly decided in the case." State v. Ouellette,190 Conn. 84, 91, 459 A.2d 1005 (1983). Notwithstanding that footnote, this court holds that payments are to be applied first to interest and then to principal. The mortgage deed which accompanied the note provides in relevant part that "all payments received . . . shall be applied by Lender . . . to interest payable on the Note, then to the principal of the Note. . . ." "`It is not within the power of courts to create new and different CT Page 11378 agreements.' Jay Realty, Inc. v. Ahearn Development Corporation,189 Conn. 52, 55, 453 A.2d 771 (1983)." Bank of Boston Connecticutv. Schlesinger, 220 Conn. 152, 159, 595 A.2d 872 (1991).
The defendants also argue that the doctrine of merger precludes any reliance upon the language of the mortgage deed to determine how payments are applied as between principal and interest. They contend that the original terms of the debt are superseded by the rights and obligations under the deficiency judgment. "Merger reflects the fact that `[w]hen the plaintiff recovers a valid and final personal judgment, his [or her] claim is extinguished and rights upon the judgment are substituted for it. . . .'" Tucker v. Pace Investment Association, 32 Conn. App. 384,388, 629 A.2d 470 (1993). "The theory of `merger' and the `transactional test' steer the operation of res judicata." Ibid. "Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . ." (Citations and internal quotation marks omitted.) Ibid. However, the deficiency judgment here did not purport to redetermine the applicable rate of interest. Moreover, courts have not employed the doctrine of merger as a component of res judicata to subvert an agreement between parties. "Merger is not favored unless it promotes the intention of the parties." City SavingsBank of Bridgeport v. Miko, 1 Conn. App. 30, 37n. 1, 467 A.2d 929
(1983).
As the plaintiff aptly observes in its application, if payments were credited as the defendants contend they should be, there eventually would be an outstanding balance remaining on the judgment, but no additional interest would be chargeable. "[I]nterest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." Nieditz v. Morton S. Fine Assoc.,Inc., 199 Conn. 683, 691, 508 A.2d 438 (1986). The defendants' position would lead to an illogical and unjust result because there would be no compensation to the plaintiff for further delay in payment by the defendant.
The court holds that the applicable rate of interest is eighteen percent, as provided for in the note, and that the payments are to be applied first to interest and then to principal, as provided in the mortgage deed.
BY THE COURT CT Page 11379
Bruce L. Levin Judge of the Superior Court